IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| *In re* Subpoena to THOMAS BRYAN | Miscellaneous Action No.3:22mc007 |
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS (LULAC), et al., Plaintiffs, v. GREG ABBOTT, et al., Defendants. | (*Underlying Action:* W.D. Tex. Case No. 3:21-cv-259) |

**UNITED STATES' MEMORANDUM IN SUPPORT OF ITS
MOTION TO COMPEL COMPLIANCE WITH SUBPOENA**

The United States, by and through its undersigned attorneys, submits this memorandum of law in support of its motion to compel the compliance of Thomas Bryan with a non-party subpoena served pursuant to Federal Rule of Civil Procedure 45.

### I.  FACTUAL AND PROCEDURAL BACKGROUND

On December 6, 2021, the United States filed a Voting Rights Act enforcement action challenging Texas's 2021 Congressional and State House redistricting plans in the U.S. District Court for the Western District of Texas.  *See* U.S. Compl., *United States v. Texas*, No. 3:21-cv-299 (W.D. Tex. Dec. 6, 2021), ECF No. 1; *see also* U.S. Am. Compl., *LULAC v. Abbott*, No. 3:21-cv-259 (W.D. Tex. June 6, 2022), ECF No. 318.  The United States' case was then consolidated with *LULAC v. Abbott*, No. 3:21-CV-259 (W.D. Tex.), another challenge to Texas's statewide redistricting plans.  *See* Order, *LULAC v. Abbott*, No. 3:21-cv-259 (W.D. Tex. Dec. 10, 2021), ECF No. 83.  In its complaint, the United States alleges that the 2021 Texas House plan

1

has a discriminatory result and that the Texas Congressional plan has a discriminatory purpose and discriminatory result, in violation of Section 2 of the Act, 52 U.S.C. § 10301. *See* U.S. Am. Compl. ¶¶ 3-4. Discovery is ongoing and closes July 15, 2022.

During the 2021 redistricting process, Texas House Redistricting Committee Chair Representative Todd Hunter hired Butler Snow LLP, a law firm with an extensive public policy practice, to assist with his redistricting work. *See* Tex. House Comm. Tr., Ex. 1, at 18. In turn, Butler Snow hired consultant cartographer Thomas Bryan to provide demographic and analytic support. Representative Hunter publicly acknowledged that his initial proposed redistricting plan for the Texas House was drawn, in part, by Butler Snow. *See id.*

On May 3, 2022, the United States served a subpoena on Mr. Bryan requiring production of, among other things, "documents relating to any redistricting proposal for the Texas delegation to the U.S. House of Representatives or the Texas House." Bryan Subpoena, Ex. 2 at 6. Through counsel, Mr. Bryan sent responses and objections to the United States' subpoenas on May 17, 2022. Bryan Responses and Objections, Ex. 3. The deadline to produce responsive documents was June 2, 2022. On June 3, 2022, Butler Snow, now counsel for Mr. Bryan, informed the United States that Mr. Bryan would refuse either to produce any responsive documents or to provide a privilege log.

This Court should grant the United States' motion to compel. Mr. Bryan has documents that are highly relevant to the United States' claims in this case, and he has failed to articulate a valid basis to withhold them.

## II.    LEGAL STANDARD

A subpoena recipient who is not prepared simply to provide the requested material must serve on the requesting party "a written objection to" producing the documents requested. Fed.

R. Civ. P. 45(d)(2)(B). "An objection must state whether any responsive materials are being withheld on the basis of that objection. An objection to part of a request must specify the part and permit inspection of the rest." Fed. R. Civ. P. 34(2)(C). "A person withholding subpoenaed information under a claim that it is privileged" is required to "expressly make the claim" and "describe the nature of the withheld documents" such that "the parties [may] assess the claim." Fed. R. Civ. P. 45(e)(2)(A)(i)-(ii). The party withholding documents has the burden to establish they are privileged or protected. *See In re Grand Jury Proceedings*, 33 F.3d 342, 353 (4th Cir. 1994). "At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production." Fed. R. Civ. P. 45(d)(2)(B)(i).

### III.  ARGUMENT

Mr. Bryan's Responses and Objections to the United States' subpoena fail to establish grounds to withhold responsive documents. Mr. Bryan lists boilerplate overbreadth and relevance objections that do not provide a basis for withholding documents.[1] Mr. Bryan also claims broad privileges—without sufficient factual bases—that do not apply to third-party

---

[1] Mr. Bryan's objections include assertions that the information requested is "irrelevant," Ex. 3 at 4, "disproportionate," *id.*, and "publicly available," *id.* at 6; that the subpoena requests "all documents" in a given category, *id.* at 7, documents "created after October 25, 2021," *id.* at 5, and documents created before "the fall of 2021," *id.*; that the subpoena "does not list an end date," *id.* at 12, and "falls short of [a] more stringent proportionality standard," *id.* at 4; and that it is "harassing" to request employment-related contracts between particular individuals and the government, *id.* at 11. None of these boilerplate or general objections establish grounds for withholding responsive documents. *See Fidelity Nat'l Title Ins. Co. v. Barringer Land SC, LLC*, No. 2:13-cv-69, 2014 WL 12594207, at *1 (N.D. W. Va. Apr. 15, 2014); *see also Freydl v. Meringolo*, 09 Civ. 7196, 2011 WL 2566087, at *4 (S.D.N.Y. June 16, 2011) ("Asserting boilerplate objections to every request made in the plaintiff's . . . first set of requests for production of documents, without . . . producing any document, amounts to a blanket refusal to participate in discovery and is a paradigm of discovery abuse." (internal quotation marks and citation omitted)).

redistricting consultants.[2] The Court should require immediate disclosure of documents responsive to the United States' requests.

### A. The Subpoenaed Documents are Relevant.

The United States seeks documents related to redistricting in the possession of Mr. Bryan, a consultant demographer. These documents are likely to include—at minimum—draft maps and communications between Mr. Bryan and others about the map-drawing process. Draft redistricting plans and the data and instructions given for creating those plans are highly relevant to whether "invidious discriminatory purpose was a motivating factor" in drawing the ultimately enacted maps. *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266 (1977). Similarly, these materials bear on whether "the policy underlying the State's . . . use of the contested practice or structure is tenuous" under the discriminatory results test as to redistricting for both Congress and the Texas House. *Thornburg v. Gingles*, 478 U.S. 30, 45 (1986) (citation omitted). Courts have consistently found that legislative materials are relevant in Voting Rights Act enforcement actions. *See, e.g.*, *S.C. State Conf. of NAACP v. McMaster*, No. 3:21-cv-03302, 2022 WL 425011, at *6 (D.S.C. Feb. 10, 2022); *League of Women Voters of Mich. v. Johnson*, No. 17-14148, 2018 WL 2335805, at *6 (E.D. Mich. May 23, 2018); *Veasey v. Perry,* No. 2:13-cv-193, 2014 WL 1340077, at *2 (S.D. Tex. Apr. 3, 2014); *Perez v. Perry* (*Perez II*), 891 F. Supp. 2d 808, 833 n.94 (W.D. Tex. 2012) (three-judge court). The requested materials are likewise relevant here.

---

[2] For example, Mr. Bryan writes that "[a]dditional privileges, including but not limited to, attorney-client privilege, the attorney work product doctrine, and deliberative process *may also be implicated* by DOJ's request." Ex. 3 at 3 (emphasis added). The United States disagrees that its requests implicate the named privileges, but more importantly, Mr. Bryan's vague invocations of a laundry list of privileges are insufficient to meet his burden and justify the withholding of responsive documents.

### B. Mr. Bryan Has Waived Any Claims of Privilege.

"[C]ourts have generally found that the failure to produce a timely or sufficient privilege log may constitute a forfeiture of any claims of privilege." *Wellin v. Wellin*, 2:13-cv-1831, 2015 WL 9850704, at *2 (D.S.C. Dec. 4, 2015) (collecting cases); *Nance v. Thompson Med. Co.*, 173 F.R.D. 178, 182 (E.D. Tex. 1997). "[W]ithholding materials otherwise subject to disclosure" due to a party's assertion of "a claim of privilege or work product protection" absent notice to the requesting party "is contrary to the rule, subjects the party to sanctions under Rule 37(b)(2), and may be viewed as a waiver of the privilege or protection." Fed. R. Civ. P. 26(b)(5), Advisory Committee Notes (1993 Amend.). Mr. Bryan's complete failure to produce a privilege log waives his privilege claims.

### C. Mr. Bryan's Claims of Privilege Fail on the Merits

Even if Mr. Bryan's privilege claims were not waived, he is not entitled to the privileges he has claimed.

#### 1. Work-Product Protections Do Not Extend to Legislative Work.

Mr. Bryan supported the State of Texas's legislative process, not its litigation defense, and so his materials are not protected by the work-product doctrine. To establish work-product protection, a subpoena recipient must show the document was created "*because* of the prospect of litigation," *Video Warehouse of Huntington, Inc. v. Boston Old Colony Ins. Co.*, 160 F.RD. 83, 85 (S.D. W. Va. 1994) (quotation marks omitted), and not "in the ordinary course of business or pursuant to regulatory requirements or for other non-litigation purposes," *Solis v. Food Emp'rs Labor Relations Ass'n*, 644 F.3d 221, 232 (4th Cir. 2011) (quotation marks omitted). Nothing in Mr. Bryan's objections suggests that he was employed in anticipation of litigation. Instead, available materials—including a privilege log from another subpoena recipient— indicate that Mr. Bryan was employed to draft the redistricting plans that became law in House

5

Bill 1 and Senate Bill 6.  *See* Privilege Log of Adam Foltz, Ex. 4.[3]  Since these redistricting plans "would have been created in essentially the same form in the absence of litigation," the plans and related documents were not in anticipation of litigation.  *In re Dominion Dental Servs. USA, Inc. Data Breach Litig.*, 429 F. Supp. 3d 190, 193 (E.D. Va. 2019); *see also Lloyd's of London v. Lowen Valley View, LLC*, No. 3:16-cv-465, 2017 WL 2504954, at *2 (N.D. Tex. June 9, 2017).[4]  Furthermore, use of outside counsel as an insulating layer between the Legislature and outside map-drawers suggests that "relevant and non-privileged facts remain hidden" and that "production of those facts is essential" to this litigation.  *Hickman v. Taylor*, 329 US. 495, 511 (1947).  Because Mr. Bryan's work was legislative, not legal, documents related to that work are not entitled to work-product protection.

### 2.  Mr. Bryan Cannot Invoke the Trial Preparation Expert Exemption.

Federal Rule of Civil Procedure 26(b)(4)(D) provides that "a party may not, by interrogatories or deposition, discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial."  *Id.*  This exemption does not apply to Mr. Bryan for three reasons.

First, by its terms, Rule 26(b)(4)(D) does not apply to the requested materials.  The United States does not currently seek interrogatory responses from, or a deposition of, Mr.

---

[3] Adam Foltz is a political operative hired at the direction of Representative Todd Hunter, Chair of the House Redistricting Committee.  *See, e.g.*, Alexa Ura, *Texas Appears to Be Paying a Secretive Republican Political Operative $120,000 Annually to Work Behind the Scenes on Redistricting*, Texas Tribune (Sep. 29, 2021), https://perma.cc/847D-RB9K.  Mr. Foltz's privilege log indicates that he communicated with Mr. Bryan regarding redistricting.

[4] It would be perverse to say that that Texas's persistent history of racial discrimination in redistricting—which has necessitated litigation to vindicate the rights of minority voters—somehow transforms redistricting materials into protected work product.  To the contrary, "a series of official actions taken for invidious purposes," is itself evidence of intentional discrimination.  *Arlington Heights*, 429 U.S. at 267.

6

Bryan. *See Livingston v. City of Chi.*, No. 16-cv-10156, 2021 WL 3487347, at *4 (N.D. Ill. Aug. 9, 2021) ("The plain language of [Rule 26(b)(4)(D)] applies only to 'interrogatories or depositions,' and not to requests for documents."); *Evans Indus., Inc. v. Lexington Ins. Co.*, No. 07-6423, 2008 WL 11353736, at *1 (E.D. La. July 10, 2008) ("[Defendant] is requesting production of documents [from plaintiffs' expert], tangible items which Rule 26 does *not* prohibit.").

Second, experts employed by non-party Butler Snow—and indirectly by non-party Representative Hunter—are not "employed by another party," as set forth in the rule. *See Curtis Park Grp., LLC v. Allied World Specialty Ins. Co.*, No. 20-cv-00552, 2021 WL 1022703, at *7 (D. Colo. Mar. 17, 2021) (citing *Durflinger v. Artiles*, 727 F.2d 888, 891 (10th Cir. 1984); *Ark. River Power Auth. v. The Babcock and Wilcox Co.*, 310 F.R.D. 492, 497-98 (D. Colo. 2015) (collecting cases nationwide and stating "the court has not found[] any case in which a non-party has been permitted to invoke Rule 26(b)(4)(D) in a case where it was not a party.")).

Third, Mr. Bryan was not retained in anticipation of litigation or to prepare for trial, nor has any party designated him as an expert witness. Instead, he was an "active participant in the events which form the subject matter of this litigation"—namely, the passage of a redistricting plan alleged to have discriminatory purpose and result—and the United States is therefore "entitled to whatever discovery" it "may deem appropriate." *Marylanders for Fair Representation, Inc. v. Schaefer*, 144 F.R.D. 292, 303 (D. Md. 1992) (three-judge court).

### 3. Mr. Bryan has failed to identify an attorney-client relationship

In the Fourth Circuit, attorney-client privilege "applies only if (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made" is an attorney or the attorney's subordinate and is acting as an attorney in connection with

7

the communication; "(3) the communication relates to" a client's informing the attorney of a fact in private "for the purpose of securing" a legal opinion or legal services; "and (4) the privilege has been (a) claimed and (b) not waived by the client." *Hawkins v. Stables*, 148 F.3d 379, 383 (4th Cir. 1998) (quotation marks omitted).  "The burden is on the proponent of the attorney-client privilege to demonstrate its applicability." *Id.* (quotation marks omitted).

Mr. Bryan has not shown that his documents reflect communications for the purpose of a legal opinion or legal services.  "If what is sought is not legal advice but only [map-drawing] service . . . or if the advice sought is the [demographer's] rather than the lawyer's, no privilege exists." *United States v. Kovel*, 296 F.2d 918, 922 (2d Cir. 1961); *accord Williams v. Big Picture Loans, LLC*, 303 F. Supp. 3d 434, 446 (E.D. Va. 2018).  Mr. Bryan's general assertion of attorney-client privilege with no facts to support it falls short of the showing needed to benefit from the privilege.

### 4. Legislative Privilege Does Not Apply to Documents in Mr. Bryan's Possession.

Legislative privilege is a qualified evidentiary privilege that "protects a state legislative actor from discovery," but "only to the very limited extent that a public good transcends the normally predominant principle of utilizing all rational means for ascertaining truth." *Benisek v. Lamone*, 241 F. Supp. 3d 566, 574 (D. Md. 2017) (three-judge court); *Jefferson Cmty. Health Care Centers, Inc. v. Jefferson Par. Gov't*, 849 F.3d 615, 624 (5th Cir. 2017).  Legislative privilege can extend to individuals other than legislators, but there remains "a requirement that a legislative assistant or aide be *directly* employed and paid by an individual legislator, a legislative committee, or the legislature as a whole." *Page v. Va. State Bd. of Elec.*, 15 F. Supp. 3d 657, 664 (E.D. Va. 2014) (emphasis added).  This limitation "provides a sensible and defensible bulwark against excessive use of the legislative privilege," that "prevents legislators

from enveloping lobbyists and outside experts in a cloak of invisibility." *Id.* Mr. Bryan was employed by Butler Snow, and was not "directly employed and paid by an individual legislator, a legislative committee, or the legislature as a whole." *Id.* He is therefore not entitled to claim legislative privilege categorically over his documents.

Furthermore, to assert legislative privilege, an individual entitled to do so must show that a communication "contains or involves opinions, motives, recommendations or advice about legislative decisions between legislators or between legislators and their staff." *Jackson Mun. Airport Auth. v. Bryant*, No. 3:16-cv-246, 2017 WL 6520967, at *6 (S.D. Miss. Dec. 19, 2017) (citations omitted). Mr. Bryan has not identified with specificity any responsive documents that are communications with legislators. He has not identified which, if any, of these documents contain "opinions, motives, recommendations, or advice." And he has not identified which, if any, of the documents are "about legislative decisions." *See* Bryan's Responses and Objections to Subpoena, Ex. 3 at 3, 5-11 (invoking legislative privilege without reference to specific documents in Mr. Bryan's possession). Mr. Bryan has not carried his burden, and, for that reason, any documents withheld on the basis of legislative privilege should be produced.

Additionally, some of the documents the United States has requested are categorically not subject to legislative privilege based on the documents' content, even if they reflect communications with legislators. Technical advice, such as directions for how to use map-drawing software, read maps, and use demographic information in conjunction with mapping, is not protected from disclosure. *See United States v. El Paso Cnty.*, 682 F.2d at 530, 542 (5th Cir. 1982); *Chemtech Royalty Assocs., L.P. v. United States*, No. 06-258, 2009 WL 854358, at *3-*6 (M.D. La. Mar. 30, 2009); *see also Committee for a Fair and Balanced Map v. Ill. State. Bd. of Elections*, No. 11-cv-5065, 2011 WL 4837508, at *10 (N.D. Ill. Oct. 12, 2011) (concluding that

9

the identities of retained experts and consultants used in the redistricting process were not privileged). Additionally, communications transmitting population demographic data and other statistics consist of primarily factual information. Courts have declined to apply legislative privilege to apply to factual documents. *Bethune-Hill v. Va. State Bd. of Elec.*, 114 F. Supp. 3d 323, 343 (E.D. Va. 2015); *Fair and Balanced Map*, 2011 WL 4837508, at *10. Mr. Bryan has not made an adequate showing to withhold any of his documents based on legislative privilege at all. But at a minimum, technical advice and factual information in his possession must be disclosed.

Finally, even if this Court were to determine that the qualified legislative privilege applies to some documents held by Mr. Bryan, the United States' interest in enforcing the constitutional prohibition on intentional racial discrimination in voting and the uniquely probative nature of the withheld documents must overcome assertions of a "qualified" legislative privilege as to documents concerning the 2021 Congressional redistricting plan. The factors typically applied to determine when legislative privilege must yield uniformly favor disclosure. Specifically, courts have analyzed,

> (i) the relevance of the evidence sought to be protected; (ii) the availability of other evidence; (iii) the 'seriousness' of the litigation and the issues involved; (iv) the role of the government in the litigation; and (v) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable.

*Page*, 15 F. Supp. 3d at 666 (internal citation and quotation marks omitted). The documents sought are highly relevant, and they are a unique source of evidence because officials "seldom, if ever, announce on the record . . . their desire to discriminate against a racial minority." *Smith v. Town of Clarkton, N.C.*, 682 F.2d 1055, 1064 (4th Cir. 1982). The seriousness of litigation to enforce the constitutional protection against racial discrimination in voting is beyond question,

and the role of the government in this matter is clear. Finally, disclosure of legislative documents in past Voting Rights Act litigation establishes that production of such materials has not rendered Texas officials timid. *See, e.g.*, *Veasey*, 2014 WL 134007, at *2. This Court should, at a minimum, order Mr. Bryan to produce all documents in his possession, custody, or control that address the allegedly intentionally-discriminatory 2021 Texas Congressional redistricting.

## IV.   CONCLUSION

For the foregoing reasons, the United States respectfully requests that this Court order Thomas Bryan to produce all responsive documents for which his Responses and Objections have failed to establish a claim of privilege. Given that fact discovery ends on July 15, the United States respectfully requests that the Court order production within seven days of the date of the Court's order.

Dated: June 14, 2022

JESSICA D. ABER
United States Attorney

By: */s/ Jonathan T. Lucier*
Jonathan T. Lucier, VSB No. 81303
Attorney for the Movant
Office of the United States Attorney
919 East Main Street, Suite 1900
Richmond, Virginia 23219
Tel.: (804) 819-5400
Fax: (804) 771-2316
Email: jonathan.lucier@usdoj.gov

Respectfully submitted,

PAMELA S. KARLAN
Principal Deputy Assistant Attorney General
Civil Rights Division

*/s/ Holly F.B. Berlin*
T. CHRISTIAN HERREN, JR.
TIMOTHY F. MELLETT
DANIEL J. FREEMAN
JANIE ALLISON (JAYE) SITTON
MICHELLE RUPP
JACKI L. ANDERSON
JASMIN LOTT
HOLLY F.B. BERLIN
Attorneys, Voting Section
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530

                Tel.: (202) 532-3514
               Email: holly.berlin@usdoj.gov

**CERTIFICATE OF SERVICE**

      I hereby certify on June 14, 2022, copies of the foregoing were served by electronic mail on counsel for Thomas Bryan:

Scott K. Field
Butler Snow
1400 Lavaca Street, Suite 1000
Austin, TX 78701
scott.field@butlersnow.com

 

/s/_____
Jonathan T. Lucier, VSB No. 81303
Office of the United States Attorney
919 East Main Street, Suite 1900
Richmond, Virginia 23219
Tel.: (804) 819-5400
Fax: (804) 771-2316
Email: jonathan.lucier@usdoj.gov